IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOE MORRISETTE, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **CIVIL ACTION 06-0578-WS-B** |
| ) | |
| **NOVASTAR HOME MORTGAGE, INC.,**) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter is before the Court on the motions to dismiss filed by defendant Transnation Title Insurance Company ("Transnation"). (Docs. 41, 70). The parties have filed briefs in support of their respective positions, (Docs. 41, 49, 60, 70), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant materials in the file, the Court concludes that the motions to dismiss are due to be granted.

**BACKGROUND**

The plaintiffs are residential mortgage borrowers. Defendant NovaStar Home Mortgage, Inc. is the lender. Transnation, through its alleged agent, Swafford Settlement Services, Inc. ("Swafford"), provided title insurance on the loan. Transnation is subject to a rate filed with the Alabama Department of Insurance limiting the charge for such a policy to $161, but the settlement statement reflects a charge of $221. The second amended complaint (Doc. 47) alleges that Transnation thereby: (1) violated Section 8(b) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b); and (2) negligently and/or wantonly caused the title insurance premium to exceed that allowed by Alabama law. (Doc. 1 at 10-12). A third amended complaint, allowed after the motion to dismiss was filed, adds class allegations. (Doc. 66).

**DISCUSSION**

"A motion to dismiss [for failure to state a claim] may be granted only when a defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kirwin v. Price Communications Corp.*, 391 F.3d 1323, 1325 (11th Cir. 2004) (internal quotes omitted). "When considering [such] a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and the exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotes omitted).

**A. RESPA.**

Section 8(b) provides as follows:

> (b) <u>Splitting Charges</u>. No person shall give and *no person shall accept any portion*, split, or percentage *of any charge* made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan *other than for services actually performed.*

12 U.S.C. § 2607(b) (emphasis added). The plaintiffs were charged $221 for title insurance, even though Transnation's rate filed with the Alabama Department of Insurance allows it to charge only $161 for such a policy. The plaintiffs argue that, "[b]y operation of Alabama law, only $161.00 could have been collected for the title insurance premium and, therefore, the remaining $150.00 [sic] constitutes a fee for 'other than services actually performed' [sic] within the meaning of 12 U.S.C. § 2605(b) [sic]." (Doc. 49 at 2).

As the parties recognize, there are at least two forms of activity that could fall within the scope of Section 8(b): a "markup" and an "overcharge." A "markup," as defined in a case cited by both parties, occurs "when the provider outsources the task of providing the service to a third-party vendor, pays the vendor a fee for the service, and then, without providing an additional service, charges homeowners seeking mortgages a

higher fee for the settlement service than that which the provider paid to the third-party vendor." *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 53 (2nd Cir. 2004). The Eleventh Circuit has indicated that such conduct constitutes a markup. *Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979, 983 (11th Cir. 2003).[1] An "overcharge," as defined in *Kruse*, "aris[es] out of settlement services provided by the lender itself but charged to consumers seeking home mortgages for substantially more than the provider's cost." 383 F.3d at 53.

Two appellate courts have held that, a contrary policy statement by the Department of Housing and Urban Development ("HUD") notwithstanding, Section 8(b) unambiguously does not cover overcharges. *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384, 386-87 (3rd Cir. 2005); *Kruse*, 383 F.3d at 55-57. According to *Kruse*, "nothing in that language [of Section 8(b)] authorizes courts to divide a 'charge' into what they or some other person or entity deems to be its 'reasonable' and 'unreasonable' components. Whatever its size, such a fee is 'for' the services rendered by the institution and received by the borrower." *Id.* at 56; *accord Santiago*, 417 F.3d at 387 (Section 8(b) does not allow a court to divide a fee into a reasonable part, as to which services were rendered, and an unreasonable remainder, as to which services were not rendered). The statutory text of RESPA, as well as a previous congressional rejection of a "reasonableness" cap on settlement charges, demonstrate that "Congress did not intend section 8(b) to serve as a price-control mechanism." *Kruse*, 383 F.3d at 57.

The plaintiffs do not challenge the authority of *Kruse* and *Santiago*; instead, they insist that "[t]his is not an overcharge claim" but an "illegal mark-up." (Doc. 49 at 9). Transnation, unsurprisingly, takes the opposite view. (Doc. 41 at 9).

On its face, the conduct challenged here appears to constitute an overcharge and not a markup. There is no question but that Transnation provided exactly the service it

---

[1]*Accord Price v. Countrywide Home Loans, Inc.*, 2005 WL 2354348 at *9 (S.D. Ga. 2005) (construing Sosa as paralleling the *Kruse* definition).

was paid to provide: a title insurance policy. Nor is Transnation alleged to have split the $221 fee with any person or entity that did not provide title insurance services.[2] The plaintiffs' beef is not that Transnation performed no services but that it was paid too much for those services — i.e., that it overcharged for the policy.

The plaintiffs insist that Transnation's filed rate takes this case outside the overcharge scenario. An overcharge, they say, occurs when a charge is unreasonable, and they do not challenge the charge as unreasonable but as illegal (under Alabama law). Since the filed rate establishes the most Transnation could lawfully charge for the title policy, it also establishes the portion of the charge that was for services actually rendered, such that the balance of the charge could not be for services actually rendered and must perforce constitute a markup. (Doc. 49 at 9).

The trouble is that, whether described as unreasonable (as a charge above a filed rate presumably would be) or illegal, what the plaintiffs challenge is the amount of a fee charged by a provider of services that actually provided the services and that did not split the fee with any person or entity that did not provide services. "Whatever its size, such a fee is 'for' the services rendered by the institution and received by the borrower." *Kruse*, 383 F.3d at 56. Finding the dividing line between a proper amount and an improper excess may be easier in the case of a filed rate, but the effort is still nothing more than an attempt to rein in costs of a service simply because they are deemed too high, and "Congress did not intend section 8(b) to serve as a price-control mechanism." *Id.* at 57.[3]

---

[2]The complaint alleges that Transnation split the fee with Swafford but not with the lender. The complaint does not allege that Swafford performed no services but on the contrary confirms that Swafford sold the policy on Transnation's behalf and was paid a commission. (Doc. 47, ¶ 21; Doc. 49 at 9).

[3]Appellate courts have routinely echoed this sentiment. *See Santiago*, 417 F.3d at 387 n.3; *Haug v. Bank of America, N.A.*, 317 F.3d 832, 837 (8th Cir. 2002); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir. 2002); *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 264 (4th Cir. 2002).

Crudely put, Section 8(b) addresses the practice of being paid *at all* for doing *nothing*, not the practice of being paid *too much* for doing *something*.

The plaintiffs appear to suggest that the Eleventh Circuit — apparently alone among all courts in the United States — has expanded the range of actionable markups to include charges that are not proportional to the services provided. For this proposition, they seize on language in *Sosa* that the plaintiff must allege "that [the lender] performed no services that would justify its retention of a portion of the fee." 348 F.3d at 983. (Doc. 49 at 6-7). The plaintiffs assume that *Sosa* thereby requires each "portion" of a fee to be separately "justified" by the services rendered. (*Id.* at 10).

The plaintiffs' interpretation is contradicted by *Sosa* itself. In the sentence immediately following that quoted by the plaintiffs, the *Sosa* Court concluded that the plaintiffs did not state a claim because they "fail[ed] to allege that [the lender] did not perform *any* services" and because they could not credibly do so. 348 F.3d at 983 (emphasis added). Moreover, the Eleventh Circuit identified the congressional intent behind Section 8 as being "to eliminate fees for which *no* service was performed and *no* goods were furnished." *Id*. at 981 (emphasis added). These pronouncements that Section 8(b) addresses only those retaining a fee without providing any services are incompatible with the plaintiffs' argument in favor of separate evaluation of each incremental portion of a fee. The natural reading of the language in *Sosa* on which the plaintiffs rely is that the defendant must provide the *type* of services represented by the fee in order to justify retaining a portion of the fee.[4]

---

[4]Thus, for example, in *Sosa* the challenged charge was for messenger or courier services. That the defendant lender may have performed other sorts of services would not entitle it to retain a portion of the charge for messenger or courier services if it did not provide any such services.

According to a HUD regulation, "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section." 24 C.F.R. § 3500.14(c). While the plaintiffs cite this regulation for the proposition that the rendering of some quantity of services does not automatically

There is a further difficulty with the plaintiffs' attempt to cast as a markup an excessive charge by a provider of services. As defined in *Kruse* and treated in *Sosa*, a markup occurs only when someone who has performed no services tacks on a surcharge to the charge of someone who did provide services. The plaintiffs have identified no case adopting a more expansive definition.[5] Here, there is no allegation that Transnation took a fee charged by someone else and added a little extra without doing anything. Nor is there an allegation that Swafford or the lender took Transnation's fee and added a little extra without doing anything.

In summary, because the plaintiffs challenge an overcharge rather than a markup, and because (as the plaintiffs concede) Section 8(b) does not cover overcharges, their claim against Transnation under this section fails to state a claim upon which relief can be granted.

### B. Negligence/wantonness.

The plaintiffs' state law claims depend on the proposition that Transnation "caused the premium to exceed the amount allowed by Alabama law." (Doc. 47, ¶ 66). According to the Alabama Code, "[n]o ... title insurer ... shall charge any premium rate for any policy or contract of title insurance except in accordance with the filed premium rates which are in effect for the title insurer as provided in this section." Ala. Code § 27-25-6(a). However, a related provision establishes that "[t]his chapter shall be enforceable only by the commissioner and does not create any private cause of action or other private legal recourse." *Id.* § 27-25-9(b).

---

defeat liability, (Doc. 49 at 6), Transnation's provision of a title insurance policy was neither "nominal" nor "duplicative," and the plaintiffs do not argue otherwise. Nor does the regulation's limited scope support the plaintiffs' attempt to contort *Sosa* into a guarantor of non-excessive charges.

[5]The generic definition they draw from a legal dictionary, (Doc. 49 at 2 n.2), is of course inapposite to the specific statutory context at issue.

"One claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute." *American Automobile Insurance Co. v. McDonald*, 812 So. 2d 309, 311 (Ala. 2001). The plaintiffs do not attempt to meet this daunting standard, and the clarity of Section 27-25-9(b) negates their ability to do so.[6]

### C. Class Claims.

Transnation's second motion to dismiss challenges the plaintiffs' class claims on the same grounds as its original motion to dismiss challenges the individual claims. (Doc. 70). The plaintiffs have elected not to respond. *See* Local Rule 7.1(a) (absent a motion-specific briefing schedule, responses to motions to dismiss must be filed within ten days of service). Because the individual claims are due to be dismissed, the class claims are due to be dismissed as well.

### CONCLUSION

For the reasons set forth above, Transnation's motion to dismiss is **granted**. All claims against Transnation are **dismissed**.

DONE and ORDERED this 19th day of April, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[6] The plaintiffs do question the impact of Section 27-25-9(b) on their RESPA claim, (Doc. 49 at 10-18), but their failure to state a claim under Section 8(b) obviates consideration of their argument in this regard.